IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DANIELLE M. VAUGHNS, §
§
Plaintiff, §
§
v. § No. 3:24-cv-1845-K (BT)
§
KAUFMAN COUNTY, et al., §
§
Defendants. §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

*Pro se* litigant Danielle M. Vaughns proceeds *in forma pauperis* against the Kaufman County Sheriff's Office, the Kaufman County Detention Center, the Kaufman County District Attorney, and the Kaufman County Courthouse for various alleged violations of her rights. She seeks $6 million and her immediate release from the Kaufman County Detention Center. First Am. Compl. at 4 (ECF No. 5). Since the filing of this action, Vaughns has been released from detention in Kaufman County. *See* Notice Change of Address (ECF No. 23). So, to the extent Vaughns previously sought relief sounding in habeas, such claims are now moot. *See Oluwaseun v. Mayorkas*, 2025 WL 1698728, at *2 (N.D. Tex. May 22, 2025) (Rutherford, J.), *rec. adopted sub nom. Shomefun v. Mayorkas*, 2025 WL 1697499 (N.D. Tex. June 17, 2025) (concluding that request for release in habeas petition was mooted by the petitioner's release from confinement).

The Court now considers the remainder of Vaughns's claims as alleging violations of her civil rights under 42 U.S.C. § 1983. For the following reasons, the Court should dismiss this civil action under 28 U.S.C. §§ 1915A and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

## Background

Vaughns alleges that members of the Sheriff's Office entered her home without a warrant on March 31, 2023. First. Am. Compl. at 4. These officers, who Vaughns admits her property manager summoned to evict her, purportedly removed her and her belongings from the dwelling. *Id.*; Resp. at 1 (ECF No. 6). Vaughns complains that these officers ignored documentation supposedly establishing her right to remain in the home—consequently forcing Vaughns and her two children to live on the street. First Am. Compl. at 7

Vaughns continued communicating with the Sheriff's Office following the eviction to prove that she was entitled to remain in her home. *See id.* This allegedly angered officers—including "acting captain" "Richard Mooseburger" and Investigator Randi Griffin—who supposedly removed any record of Vaughns's outstanding warrants from online databases so that she would be unaware of them. *Id.*

On August 13, 2023, Houston police stopped Vaughns and informed her that she had four warrants out for her arrest in Kaufman County. Resp. at 1–2.

The next day, Vaughns received "harassing emails" from Investigator Griffin asking her to turn herself in. *Id.* at 2. Vaughns contacted Acting Captain "Mooseburger" but did not comply with Investigator Griffin's request. *See id.* On April 10, 2024,[1] during another "routine traffic stop" in Bellaire, Texas, Vaughns was again informed that she had warrants out for her arrest in Kaufman County. *Id.*; First Am. Compl. at 7. It was during this stop that police informed Vaughns that her warrants could only be accessed by law enforcement. First Am. Compl. at 7; Resp. at 2. Vaughns immediately contacted the Sheriff's Office by email, but she did not receive a response. Resp. at 2.

Two months later, on June 14, 2024, Vaughns was arrested in Katy, Texas on a "hidden warrant." First Am. Compl. at 8; Resp. at 2. Vaughns claims that she subsequently suffered various violations of her rights during her temporary detention in Harris County. *See id.*

Vaughns was "eventually" transferred to the Kaufman County Detention Center, where she was initially held on a $15,000 bond. First. Am. Compl. at 8. Vaughns asserts that she suffered numerous abuses at the hands of the prison staff during her pre-trial confinement, including that they: (i) deprived her of

---

[1] Vaughns's First Amended Complaint alleges that this traffic stop occurred on April 10, **2023**. First. Am. Compl. at 7 (emphasis added). But her Response indicates a date of April 10, **2024**. Resp. at 2 (emphasis added). Considering the more fulsome timeline provided in her Response, the Court interprets Vaughns's pleadings as stating this event occurred in 2024.

soap so she would have to eat meals with dirty hands; (ii) withheld access to other items necessary for hygiene; (iii) forced Vaughns to wait for nail clippers to remedy a "painful hangnail"; (iv) ignored violence against Vaughns, even after she reported unsafe conditions; (v) denied her food during meal times; (vi) prohibited access to the law library; (vii) prevented Vaughn from communicating with her children; and (viii) prohibited Vaughns from communicating with others regarding her pending legal proceedings. *Id.* at 9–10; Resp. at 3–4.

Moreover, Vaughns complains that her court-appointed attorney conspired with Investigator Griffin by negotiating a plea deal and that having her fingerprinted by police in three different counties has jeopardized her ability to keep her nursing license. First. Am. Compl. at 9–10; Resp. at 3–4.

Vaughns filed the present action on July 18, 2024. *See generally* Compl. As stated, she sought her immediate release while also raising potential claims under § 1983. On July 22, 2024, the Court entered an Order and Notice of Deficiency (NOD) asking Vaughns to file either a habeas petition pursuant to 28 U.S.C. § 2241 or a § 1983 action on the Court-approved forms. *See* NOD (ECF No. 4).

Vaughns filed her First Amended Complaint that, despite being filed on the § 1983 form, sought both relief sounding in habeas and $6 million for potential claims under § 1983. *See generally* First. Am. Compl. Four days later, Vaughns filed a Response to the Court's NOD rehashing her various grievances and

reiterating her request for her immediate release from pre-trial confinement and $6 million. *See* Resp. at 4.

The same day Vaughns filed her Response, she also submitted—without leave from the Court—a habeas petition styled as a "Second Amended Petition for Writ of Habeas Corpus." *See* Second Am. Pet. (ECF No. 7). This filing raised new factual complaints, including that: (i) prison staff deprived Vaughns of food "for more than 12 hours" and turned off her water for up to 48 hours as punishment; (ii) Vaughns complained of chest pains but was ignored; (iii) Vaughns lacked consistent access to drinking water; (iv) prison staff stole Vaughns's glasses without notice; and (v) prison staff tried to force medication on Vaughns. *See id.* at 2–8. Again, Vaughns requested her immediate release from pre-trial confinement and $6 million for harm caused related to her arrest and detention. *Id.* at 9.

Vaughns continued to file seemingly random documents with the Court during the Fall of 2024. *See* ECF Nos. 10–21. Then, on October 29, 2024, Vaughns filed a notice indicating that she had been released from confinement. *See* Notice (ECF No. 23).

This is not the first case Vaughns has filed in this Court regarding the underlying factual background. *See Vaughns v. Dallas Cnty. JP Cts.*, 2023 WL 5488786, at *3 (N.D. Tex. July 28, 2023), *rec. adopted*, 2023 WL 5489052 (N.D. Tex. Aug. 23, 2023) (dismissing case brought by Vaughn challenging the results

of her eviction action under the *Rooker-Feldman* doctrine); *Vaughns v. Texas,* 2023 WL 9231398 (N.D. Tex. Aug. 29, 2023), *rec. adopted*, 2024 WL 150295 (N.D. Tex. Jan. 12, 2024) (dismissing another action brought by Vaughns challenging results of eviction action); *Vaughns v. State,* 2024 WL 4363614 (N.D. Tex. Aug. 28, 2024), *rec. adopted*, 2024 WL 4369233 (N.D. Tex. Oct. 1, 2024) (dismissing Vaughns's § 2241 petition for failure to exhaust administrative remedies); *Vaughns v. Pittman,* 2024 WL 4375798 (N.D. Tex. Aug. 28, 2024), *rec. adopted*, 2024 WL 4376310 (N.D. Tex. Oct. 2, 2024) (dismissing Vaughns's § 1983 petition that sought to bring criminal charges against individual employees of Texas Department of Child Protective Services in connection with the termination of her parental rights for lack of subject matter jurisdiction).

Having been unable to successfully challenge her eviction or termination of her parental rights, she now shifts her focus to obtaining relief related to her arrest and detention.

## Legal Standards

Because Vaughns was incarcerated when she filed this action, *see* Compl. at 1, her case is subject to preliminary screening under 28 U.S.C. § 1915A of the Prison Litigation Reform Act (PLRA). *See Sutherland v. Akin,* 2021 WL 462103, at *5 n.2 (N.D. Tex. Feb. 9, 2021) ("Because Sutherland was a 'prisoner' as defined under § 1915A(c) at the time he filed this lawsuit, the screening provisions apply

despite his subsequent release.") (citing *Johnson v. Hill*, 965 F. Supp. 1487, 1488 n.2 (E.D. Va. 1997)). Section 1915A provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a)–(b).

Under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court liberally construes Vaughns's pleadings with all deference due a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* pleadings

are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). But even under this liberal standard, Vaughns fails to state a claim.

## Analysis

### I.    Vaughns's claims against any nonjural entity should be dismissed.

Vaughns sues the Kaufman County Sheriff's Office, the Kaufman County Detention Center, the Kaufman County District Attorney, and the Kaufman County Courthouse under 42 U.S.C. § 1983. But she is unable to state a claim against any of these defendants because they are not separate legal entities having jural authority.

Claims against nonjural entities are subject to dismissal for failure to state a claim. *See, e.g., Carter v. Harris Cnty. Jail,* 2020 WL 3288124, at *1 (S.D. Tex. June 18, 2020). Each of the named respondents/defendants is a nonjural entity without the capacity to be sued in a civil rights action. *See, e.g., Johnson v. Jackson,* 2010 WL 1233508 at *2 (N.D. Tex. Mar. 5, 2010), *rec. adopted,* 2010 WL 1233537 (N.D. Tex. Mar. 29, 2010) (recognizing that Kaufman County Sheriff's Department is not a separate legal entity having jural authority); *Parsons v. Ellis Cnty. Ct.,* 2020 WL 6263746, at *3 (N.D. Tex. Oct. 2, 2020), *rec. adopted,* 2020 WL 6263170 (N.D. Tex. Oct. 23, 2020) ("Neither a sheriff's office in Texas nor a detention center or jail constitutes a jural entity."); *Delta Fuel Co.,*

*Inc. v. Maxwell*, 485 Fed. App'x 685, 686–87 (5th Cir. Aug. 10, 2012) (affirming the dismissal of § 1983 claim against a district attorney's office as a non-jural entity); *English. v. United States*, 2024 WL 3976864, at *9 (S.D. Tex. Aug. 27, 2024) (explaining that a county courthouse was a nonjural entity and, thus, not a proper party to the lawsuit).

Therefore, Vaughns's claims should be dismissed.[2]

## II.    Vaughns fails to state a claim under § 1983.

Even if Vaughns named parties properly subject to suit, she is unable to sufficiently plead any of these claims. Accordingly, the Court should dismiss the present action for failure to state a claim.

### A. Vaughns fails to state a Fourth Amendment claim.

#### i.  Illegal Search and Seizure.

Vaughns asserts that officers of the Sheriff's Office entered her home without a warrant on March 31, 2023 and removed her belongings and her family from the property. First. Am. Compl. at 4. The Court interprets these allegations as raising a claim under the Fourth Amendment for illegal search and seizure.

---

[2] Ordinarily, a *pro se* plaintiff who names a nonjural entity as a defendant should be alerted and given an opportunity to amend before dismissal of the action. *See Parker v. Fort Worth Police Dep't*, 980 F.2d 1023, 1026 (5th Cir. 1993). But here, such amendment would be futile because Vaughns fails to plausibly allege a constitutional violation under § 1983—regardless of whether that claim is asserted against a nonjural entity or a proper defendant like the City of Kaufman or Kaufman County. *See infra* Section II.

The Fourth Amendment "protects persons against unreasonable searches of 'their persons [and] houses." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (alteration in original) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). This right is not inviolable, as the Constitution also "contemplates searches and seizures based 'upon probable cause.' " *United States v. Bass*, 996 F.3d 729, 737 (5th Cir. 2021) (quoting U.S. CONST. AMEND IV.). "An officer may always enter a home with a proper warrant." *Lange v. California*, 594 U.S. 295, 303 (2021).

Contrary to Vaughns's assertions, law enforcement *did* have a warrant to enter her home. Kaufman County records indicate that a Kaufman County Justice of the Peace issued a warrant against Vaughns for criminal trespass of a habitation in violation of Section 30.05 of the Texas Penal Code on March 31, 2023—the same day that Vaughns alleges law enforcement evicted her from the property. *See The State of Texas v. Danielle Vaughns*, 23M-10240*1 (Kaufman County Justice of the Peace Precinct 1), available at https://portal-txkaufman.tylertech.cloud/Portal/Home/Dashboard/29 (search "Vaughns, Danielle").

And Vaughns has done nothing to call the validity of this warrant into question. She merely claims that the property manager submitted false information to the police "to get [Vaughns] out of the house possibly to avoid the eviction process." Resp. at 6. But to impeach a warrant, a party must show that an agent "deliberately or recklessly misled the magistrate and that without the

falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant." *United States v. Hall,* 2023 WL 2674855, at *2 (N.D. Tex. Mar. 29, 2023) (citing *United States v. Davis,* 226 F.3d 346, 351 (5th Cir. 2000), citing in turn *Franks v. Delaware,* 438 U.S. 154, 171–72 (1978)). Vaughns makes no such allegation in any of her filings.

Moreover, a party must have standing to contest the validity of a search under the Fourth Amendment. *See United States v. Ibarra,* 948 F.2d 903, 905 (5th Cir.1991). A person has standing if she can demonstrate a reasonable expectation of privacy in the area searched. *Id.* at 905–06 (citations omitted). The following factors are utilized by courts to determine whether a person has a legitimate expectation of privacy:

> whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy and whether he was legitimately on the premises.

*Id.* at 906.

Here, the facts establish that Vaughns lacks standing to bring a claim for illegal search and seizure. The unimpeached warrant issued for her trespass of a habitation demonstrates that she had no legitimate claim to reside at the property—and no right to exclude others from the property. Therefore, it cannot

be said that Vaughns exhibited a reasonable expectation of privacy that would afford her standing to challenge the Sheriff Office's entry into her residence.

Accordingly, the Court should conclude that Vaughns has failed to state a claim for illegal search and seizure under the Fourth Amendment.

### ii. False Arrest / False Imprisonment.

Vaughns alleges throughout her filings that there was no basis for her arrest and that she did not understand the basis for her incarceration. The Court should liberally construe Vaughns's false arrest and false imprisonment claims as § 1983 claims under the Fourth Amendment.

A § 1983 claim for false arrest and/or false imprisonment requires a plaintiff to demonstrate that she was arrested and/or detained without probable cause in violation of the Fourth Amendment. *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment 'false imprisonment.' "); *see also Defrates v. Podany*, 789 Fed. App'x 427, 431 (5th Cir. 2019) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). To state a § 1983 claim for false arrest or false imprisonment, a plaintiff must plausibly allege that the arresting officer did not have probable cause to arrest her. *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004)).

Even liberally construing Vaughns's allegations, she has failed to state a §1983 claim for false arrest or false imprisonment. Vaughns does not show that the officers lacked probable cause to arrest her. She only suggests that her arrest was unlawful due to a "hidden warrant"—i.e., that Vaughns was unaware of the warrants for her arrest due to purported retaliation by the Sheriff's Office. But Vaughns admits that she was made aware of the outstanding warrants on two different occasions before her eventual arrest. *See* First Am. Compl. at 7; Resp. at 1–2. Regardless, Vaughns provides no authority to suggest that being unaware of a warrant renders a subsequent arrest invalid. *See Jasper v. Hardin Cnty. Sheriff's Dep't*, 2012 WL 4480713, at *7, 12 (E.D. Tex. Sept. 5, 2012), *rec adopted*, 2012 WL 4472261 (E.D. Tex. Sept. 26, 2012) (rejecting false arrest claim where the plaintiff was unaware that a warrant existed).

Vaughns is also unable to identify any authority indicating that the Sheriff's Office was under some obligation to publish her outstanding arrest warrants. To the contrary, arrest warrants are only considered "public information" under Texas law "beginning immediately when the warrant is executed." Tex. Code Crim. Proc. art. 15.26. This aligns with well-established federal precedent supporting the secrecy of arrest warrants before their execution. *See also United States v. Weaver*, 384 F.2d 879, 881 (4th Cir. 1967) ("[A]gents are entitled to proceed with some circumspection, so that the fact of their search for a defendant is not disclosed to him at a time when he may flee successfully."); *Forbes Media*

*LLC v. United States*, 2021 WL 3674516, at *9 (N.D. Cal. Apr. 26, 2021), *rec. adopted*, 548 F. Supp. 3d 872 (N.D. Cal. 2021), *aff'd*, 61 F.4th 1072 (9th Cir. 2023) (recognizing that public disclosure of a sealed arrest warrant can, "among other adverse consequences, create safety risks for law enforcement, lead to the destruction of evidence, and compromise sources who assist the government").

Vaughns does not appear to challenge the validity of the arrest warrants preceding her pre-trial detention in Kaufman County—much less claim they were procured through false statements knowingly and intentionally made by the Sheriff's Office. The validity of the warrants for her arrest should further compel the Court to dismiss Vaughns's claim for false arrest. *See Jones v. Perez*, 2017 WL 4238700, at *4 (N.D. Tex. Sept. 25, 2017), *aff'd*, 790 Fed. App'x 576 (5th Cir. 2019) (citing *Mendenhall v. Riser*, 213 F.3d 226, 232 (5th Cir. 2000)) (noting that valid arrest warrants typically insulate law enforcement officers against claims for false arrest).

And to the extent Vaughns claims that her arrest was unconstitutional because the search of her home was illegal, as explained above, Vaughns fails to plausibly allege this search violated the Fourth Amendment, so any false arrest or false imprisonment claim relying on the search's alleged illegality is meritless.

Accordingly, the Court should dismiss Vaughns's Fourth Amendment claims under § 1983.

14

**B. Vaughns's medical indifference claim fails.**

Vaughns alleges that she was forced to wait for nail clippers to remedy a "painful hangnail," suffered injuries from physical violence inflicted by other inmates, and complained of chest pains to prison staff but was ignored. *See* First Am. Compl. at 9–10; Resp. at 3–4; Sec. Am. Compl. at 3. The Court liberally construes these allegations as an attempt to bring a claim for deliberate indifference to her serious medical needs. But Vaughns is unable to state such a claim. And even if she was, the PLRA prohibits the recovery of compensatory damages.

    i.  <u>Vaughns fails to state a claim for medical indifference.</u>

To establish a claim for medical indifference, Vaughns must be able to show she was denied appropriate medical care and that denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). A defendant acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A plaintiff can show deliberate indifference in this context by showing that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* at 838. On the other hand, unsuccessful medical treatment, acts of negligence, or

15

medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Hall v. Thomas*, 190 F.3d 693 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). A delay in medical care constitutes a constitutional violation only if there was deliberate indifference, which resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Vaughns's complaints are conclusory and establish, at most, negligence—which does not demonstrate deliberate indifference. *See Alverez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) ("Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.") (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617–18 (5th Cir. 2009)); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent extraordinary circumstances.") (citations omitted).

As for the allegations that the medical staff delayed treatment, Vaughns has failed to allege that she suffered any substantial harm because of the alleged

delay, and that is fatal to her claim. *See Mendoza,* 989 F.2d at 195 ("[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm.").

Thus, whether premised on conclusory allegations sounding in negligence or on a delay in medical treatment, Vaughns fails to state a claim for deliberate indifference to her medical needs.

ii.  <u>Alternatively, Vaughns is not entitled to compensatory damages because she fails to allege a physical injury.</u>

Vaughns's medical indifference claim also fails under the PLRA's physical injury requirement, which prevents a prisoner[3] from seeking monetary damages to compensate for emotional or mental injury without a prior showing of a physical injury. *See* 42 U.S.C. § 1997e(e). This physical injury requirement applies to deliberate indifference claims. *See, e.g.*, *Eason v. Frye,* 972 F. Supp. 2d 935, 946−47 (S.D. Miss. 2013) (applying PLRA physical injury requirement to medical indifference claims of pretrial detainee); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) ("Previously, however, we have applied the PLRA's physical injury requirement to bar recovery of compensatory damages for mental and emotional injuries (absent physical injury) in Eighth Amendment cases.").

---

[3] Because Vaughns was a prisoner when she filed this action, the physical injury requirement applies to her claims even though she is no longer incarcerated. *See, e.g.*, *Sutherland v. Akin,* 2021 WL 4197239, at *4 (N.D. Tex. Sept. 15, 2021).

Here, Vaughns seeks compensatory damages for the pain and suffering she experienced because of medical indifference. But she does not allege a physical injury caused by the alleged indifference. Thus, the PLRA bars her claim for compensatory damages—the only kind of relief that she can seek now that she has been released from confinement.

In sum, Vaughns fails to state a medical indifference claim, but even if she could state such a claim, the PLRA bars her claim for compensatory damages in relation to that claim because she does not allege a physical injury.

### C. Vaughns is unable to state a claim for violation of her Eighth Amendment rights.

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Eighth Amendment does not require comfortable prisons, it does not allow inhumane ones either. *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015) (citing *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015)); *see also Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989) ("In this Circuit, we have recognized that conditions of confinement which expose inmates to communicable diseases and identifiable health threats implicate the guarantees of the Eighth Amendment."). To state an Eighth Amendment conditions of confinement claim, a plaintiff must allege that her confinement caused an objectively serious deprivation that "constitutes a 'denial of the minimal civilized measures of life's necessities.' " *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir.

2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Prison officials have duties under the Eighth Amendment, which include the provision of adequate food, clothing, shelter, and medical care. *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (citing *Farmer*, 511 U.S. at 832). When stating an Eighth Amendment claim, a plaintiff must also allege that the prison official acted with a sufficiently culpable state of mind. *Coleman*, 745 F.3d at 764.

"[S]ince pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of 'basic human needs.' " *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). The basic human needs of pretrial detainees are "protected by the Due Process Clause of the Fourteenth Amendment," *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (citing *Cupit v. Jones*, 835 F.2d 82, 84–85 (5th Cir. 1987)), which affords them "protections [that are] 'at least as great as . . . those available to a convicted prisoner,' " *Price v. Valdez*, 2017 WL 3189706, at *5 (N.D. Tex. July 27, 2017) (quoting *Hare*, 74 F.3d at 639; original brackets omitted).

Constitutional challenges by pretrial detainees may be brought as an attack on a condition of confinement. *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 206 (5th Cir. 2011). To prove an unconstitutional condition of confinement, a plaintiff must prove: (1) a rule or restriction or the existence of an identifiable intended

condition or practice, (2) which was not reasonably related to a legitimate governmental objective, and (3) which caused the violation of the detainee's constitutional rights. *Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 468 (5th Cir. 2015) (cleaned up). Regarding the first element, "[a] condition is usually the manifestation of an explicit policy or restriction," but in some cases, it "may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive . . . to prove an intended condition or practice." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (cleaned up). Put differently, even though a government may not expressly subject detainees to inhumane conditions of confinement, its intent to do so may be presumed when it incarcerates detainees in the face of such known conditions and practices. *Duvall*, 631 F.3d at 207. But "[p]roving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Shepherd*, 591 F.3d at 452.

Here, Vaughns alleges that she was subjected to constitutionally insufficient conditions of confinement at the Kaufman County Detention Center. Specifically, Vaughns raises numerous complaints regarding her confinement, including that prison staff:

> (i) deprived her of soap so she would have to eat meals with dirty hands; (ii) withheld access to other items necessary for hygiene; (iii) ignored violence against Vaughns, even after she reported unsafe conditions; (v) denied her food during meal times; (vi) prohibited access to the law library; (vii) prevented Vaughn from communicating with her children; (viii) prohibited Vaughns from communicating with others regarding her pending legal proceedings; (ix) deprived

Vaughns of food "for more than 12 hours" and turned off her water for up to 48 hours as punishment; (x) denied Vaughns consistent access to drinking water; (xi) stole Vaughns's glasses without notice; and (xii) tried to force medication on Vaughns.

First Am. Compl. at 9–10; Resp. at 3–4; Sec. Am. Compl. at 2–8.

These allegations are insufficient for the Court to infer that Kaufman County has a *de facto* policy to deny pretrial detainees basic human needs or otherwise violate their constitutional rights. Rather Vaughns's claim is conclusory in nature, which alone warrants denying the claim and granting leave to amend. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (noting that a plaintiff must plead "facts sufficient to show that her claim has substantive plausibility" and "[t]he court should freely grant leave [to amend a pleading] when justice so requires.").

While, a pervasive pattern of serious deficiencies in providing for detainees' basic human needs might prove constitutional insufficiency, the acts or omissions have to be "serious, extensive[,] and extended." *Duvall, Tex.*, 631 F.3d at 208. Here, the conditions alleged by Vaughns are not extensive or extended enough to constitute a pattern of serious deficiencies. Importantly, Vaughns alleges that she was denied water and medical attention *on demand*, not that she was deprived of these necessities for extended periods of time. *See Nordyke v. City of Dallas*, No. 3:22-CV-1183-X, 2024 WL 2187545, at *3 (N.D. Tex. May 15, 2024) (rejecting conditions of confinement claim where plaintiff complained of lack of access to water and medical care). Similarly, Vaughns

21

claims she was denied food for 12 hours, but this is nowhere near a serious, extensive, or extended hardship that warrants the invocation of the Eighth Amendment.

Accordingly, Vaughns has failed to state a claim upon which relief can be granted related to her conditions of confinement.

### D. Vaughns's claim for excessive bail is moot.

Vaughns complains that her bail was initially set at $15,000, then was raised to $30,000. First. Am. Compl. at 6. She claims that this increase was intended to silence her. *Id.* The Court construes this allegation as asserting a claim for excessive bail. But claims concerning excessive bail are moot after a detainee's release from confinement. *See Kaderli v. Woods*, 2007 WL 1257106, at *1 (E.D. Tex. Apr. 30, 2007) (citing *Bailey v. Southerland,* 821 F.2d 277, 278 (5th Cir.1987)).

Accordingly, the Court should similarly conclude that Vaughns is unable to state a claim for excessive bail.

### E. The Court should dismiss Vaughns's conclusory claims for intentional infliction of emotional distress and defamation.

Vaughns alleges that Investigator Griffin and officer Mooseburger intentionally inflicted emotional distress (IIED) and defamed her character throughout their investigation of Vaughns purported crimes. First. Am. Compl. at 7. But Vaughns is not able to state a claim for either tort.

22

i. <u>IIED.</u>

The elements of intentional infliction of emotional distress in Texas are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). "Extreme and outrageous" means conduct that goes beyond the bounds of decency, is atrocious, and is utterly intolerable in a civilized community. *Kroger Tex. P'ship Ltd. v. Suberu,* 216 S.W.3d 788, 796 (Tex.2006). "Severe emotional distress" means mental anguish so severe that no reasonable person could be expected to endure it. *Stokes v. Puckett,* 972 S.W.2d 921, 924 (Tex. App.-Beaumont 1998, pet. denied).

Vaughns has alleged that law enforcement's investigation amounted to stalking. She also claims that her eviction deeply traumatized both her and her children. Assuming all of that is true, it does not rise to the level of "extreme and outrageous" behavior, such that it is utterly intolerable in a civilized community. *See Moore v. City of Desoto*, 2010 WL 3855306, at *4 (N.D. Tex. Sept. 29, 2010), *aff'd*, 450 Fed. App'x 341 (5th Cir. 2011) (denying IIED claim where law enforcement officers " 'rushed' [plaintiff's] house, tackled and handcuffed him, searched the house with weapons drawn, and placed him handcuffed in his front yard in view of his neighbors").

Accordingly, the Court should dismiss Vaughns's claim for intentional infliction of emotional distress.

     ii.  <u>Defamation.</u>

A defamation action in Texas for a private individual consists of: (1) publishing a statement; (2) that was defamatory of the plaintiff; (3) the statement was false; (4) the defendant acted negligently; and (5) the plaintiff suffered damages as a result of the statement. *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998).

Vaughns does not allege that Defendants or law enforcement officers uttered a defamatory *verbal* statement. This claim appears to be based entirely on the act of investigating and arresting Vaughns. This Court has found no authority under Texas law that holds actions can be considered statements for the purposes of a defamation claim. *See Moore,* 2010 WL 3855306, at *4.

Therefore, Vaughns's claim for defamation has no merit.

**III.**    **This Court lacks jurisdiction over any claims brought against officials or entities at home in Harris County.**

As stated, Vaughns claims that she suffered various violations of her rights during her temporary detention in Harris County. *See* First Am. Compl. at 5. To the extent Vaughns would like to add as defendants specific officials or entities in Harris County, those defendants reside in the Southern District of Texas, Houston Division. *See* 28 U.S.C. § 124(b)(2). But the Court lacks jurisdiction over a complaint relating to events or defendants in that district. *See Holleman v.*

24

*McKee,* 2005 WL 1204214, at *1 (S.D.Tex. Apr.20, 2005) (denying motion in a prisoner § 1983 action, in part, because "conduct forming the basis for" the action occurred at an institution in another judicial district and the court thus lacked jurisdiction over the incidents).

Accordingly, the Court should dismiss any claims brought against officials or entities in Harris County without prejudice to Vaughns's right to re-file any such claims in the Southern District of Texas.

## Recommendation

Accordingly, the Court should dismiss this lawsuit with prejudice for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). To the extent Vaughns asserts claims against individuals or entities in Harris County, the Court should dismiss these claims without prejudice to Vaughns's right to re-file any such claims in the Southern District of Texas.

SO RECOMMENDED.

October 27, 2025.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.